UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FAITHLIFE CORPORATION,

    Plaintiff,

v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,

    Defendant.

Case No. C18-1679RSL

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND RELATED MOTIONS

## I. INTRODUCTION

This matter comes before the Court on (1) the parties' cross-motions for partial summary judgment (Dkts. # 11, # 18), (2) plaintiff's "Motion to Continue [Defendant's] Motion for Partial Summary Judgment" (Dkt. # 16), and (3) defendant's "Motion to Bifurcate and Stay" (Dkt. # 14). The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] finds as follows:

## II. BACKGROUND

Plaintiff Faithlife Corporation is a bible software company based in Bellingham, Washington. Plaintiff was insured by defendant Philadelphia Indemnity Insurance Company under several commercial liability insurance policies during a period spanning from approximately 2015 to 2018. Ex. C, Dkt. # 12 at 75. Defendant issued plaintiff the first of two relevant policies, Policy No. PHSD1106639, for the period of December 17, 2015 to December

---

[1] The Court finds this matter suitable for disposition without oral argument.

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 1

1  17, 2016 (the "2016 Policy"). Ex. B, Dkt. # 12 at 12–73. Defendant issued plaintiff the second
2  policy, Policy No. PHSD1205448, for the period from December 17, 2016 to December 17,
3  2017 (the "2017 Policy"). Ex. C, Dkt. # 12 at 75–136. The 2016 Policy and 2017 Policy (the
4  "Policies") provided coverage for claims made against plaintiff and reported during their
5  respective policy periods. Ex. B, Dkt. # 12 at 41; Ex. C, Dkt. # 12 at 104.
6        On November 25, 2015, Charlene Wickstrom and Michael Davis, two of plaintiff's
7  former employees, filed administrative charges against plaintiff with the Washington State
8  Human Rights Commission and the Equal Employment Opportunity Commission. See Ex. D,
9  Dkt. # 12 at 138–39; Ex. E, Dkt. # 12 at 141–42. Notice of each of the administrative charges
10 was mailed to plaintiff's human resources department on April 28, 2016. Id. The administrative
11 charges alleged that plaintiff discriminated against the former employees based on age and
12 disability. Id. It is undisputed that plaintiff did not report the notices of administrative charges to
13 defendant at that time. See Compl. at ¶¶ 9–10; Dkt. # 18-1 (Skipton Decl.) at ¶ 7. Plaintiff
14 alleges that Ms. Wickstrom and Mr. Davis subsequently voluntarily withdrew their
15 administrative charges. Skipton Decl. at ¶ 6.
16       On March 22, 2017, Ms. Wickstrom, Mr. Davis, and Mr. Davis' wife filed an
17 employment discrimination case in Whatcom County Superior Court, captioned Davis v.
18 Faithlife Corp., Case No. 172004967 (the "underlying lawsuit"). Ex. F, Dkt. # 12 at 144–58. The
19 complaint in the underlying lawsuit asserted claims for age- and disability-based discrimination.
20 Id. On March 28, 2017, plaintiff reported to defendant the claim, described as "LAWSUIT –
21 Allegations of age and disability discrimination." Ex. A, Dkt. # 13 at 4, 6.
22       On April 11, 2018, defendant denied plaintiff coverage. Dkt. # 19 at 3. Thereafter,
23 plaintiff filed a lawsuit against defendant in Whatcom County Superior Court. Compl., Dkt. # 1-
24 3. On November 20, 2018, defendant removed the action to federal court based on diversity.
25 Dkt. # 1; 28 U.S.C. § 1332. Plaintiff asserts claims for declaratory relief (Compl. at ¶¶ 25–28),
26 breach of contract (id. at ¶¶ 29–31), bad faith (id. at ¶¶ 32–41), violations of the Washington
27 Insurance Fair Conduct Act, RCW 48.30.015 (id. at ¶¶ 42–52), and violation of the Washington
28 Consumer Protection Act (id. at ¶¶ 53–58), attorney's fees and costs (id. at ¶¶ 59–62), and

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 2

estoppel (id. at ¶¶ 63–64). Defendant asserts a counterclaim for declaratory relief that it owes no duty to defend, indemnify, or pay with respect to any of the underlying liabilities alleged in plaintiff's complaint. See Dkt. # 19 at 9–10.

### III. CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Dkts. # 11, # 18)

The parties have filed cross-motions for summary judgment on the issue of coverage for the claim under the Policies. See Dkts. # 11, #18.

#### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party need not "produce evidence showing the absence of a genuine issue of material fact," but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001) (internal citation omitted). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citation omitted). On cross-motions for summary judgment, the Court evaluates the motions separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." Lenz v. Universal Music Corp., 801 F.3d 1126, 1130–31 (9th Cir. 2015) (citation omitted).

### B. Interpretation of Insurance Policies

The Court's "[i]nterpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 424 (2002); Moody v. American Guar. & Liab. Ins. Co., 804 F. Supp. 2d 1123 (2011).

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify or create an ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

Panorama Village Condo. v. Allstate Ins. Co., 144 Wn.2d 130, 137 (2001) (internal citation and quotation marks omitted); see also Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 710, 712 (2016). In order to determine whether coverage exists, the Court applies a two-step process. First, the insured bears the burden of showing that the loss falls within the scope of the policy's insuring agreement. Probuilders Specialty Ins. Co. v. Coaker, 145 F. Supp. 3d 1058, 1063 (W.D. Wash. 2015) (citing McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 731 (1992)). If it does, the insurer bears the burden of showing that specific policy language excludes the loss in order to avoid coverage. Id.

### C. Discussion

Defendant contends that summary judgment should be granted in its favor because plaintiff failed to give timely notice of the claim during the relevant policy period, as required by the Policies. The Court agrees for the reasons set forth below.

The 2016 and 2017 Policies contain virtually identical language. See generally Ex. B, Dkt. # 12 at 12–73; Ex. C, Dkt. # 12 at 75–136. The relevant provisions provide:

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 4

# PART 2

## EMPLOYMENT PRACTICES LIABILITY INSURANCE

(To be read in conjunction with the Common Policy Definitions, Exclusions and Conditions Sections, Part 4, 5, 6 below)

I.   INSURING AGREEMENT

The **Underwriter** shall pay on behalf of the **Insured, Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy, for an **Employment Practice Act.**

. . . .

# PART 4

## COMMON POLICY DEFINITIONS

. . . .

**B. Claim** means:

> 2. a judicial or civil proceeding commenced by the service of a complaint or similar pleading;
>    . . . .
> 4. a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigation order or similar document, including, but not limited to, proceedings before the Equal Employment Opportunity Commission or any similar governmental agency.

. . . .

A claim shall be considered made when an **Insured** first receives notice of the **Claim.**

. . . .

> **I. Interrelated Wrongful Act** means: any causally connected **Wrongful Act** or any series of the same, similar or related **Wrongful Acts**.
>
> . . . .
>
> ### PART 6
>
> . . . .
>
> IV. NOTICE/CLAIM REPORTING PROVISIONS
>
> . . . .
>
> **A.** In the event that a **Claim** is made against the **Insured**, the **Insured** shall, as a condition precedent to the obligations of the **Underwriter** under this Policy, give written notice to the **Underwriter** as soon as practicable after any of the directors, officers, governors, trustees, management committee members, or members of the Board of Members first become aware of such **Claim**, but, not later than 60 days after the expiration date of this Policy, Extension Period, or **Run-Off Policy**, if applicable.
>
> **B.** If during this **Policy Period** an **Insured** first becomes aware of any circumstances which may subsequently give rise to a **Claim** being made against any **Insured** for a specific alleged **Wrongful Act**, and as soon as practicable thereafter, but before the expiration or cancellation of this Policy, gives written notice to the **Underwriter** of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to the **Wrongful Act**, dates and persons involved, then any **Claim** which is subsequently made against the **Insured** arising out of such **Wrongful Act** will be considered made during this **Policy Period**.
>
> **C.** All **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed one **Loss** on account of a one **Claim**. Such **Claim** shall be deemed to be first made when the earliest of such Claims was first made or first deemed made pursuant to Clause B hereinabove.

Ex. B, Dkt. # 12 at 43–53; Ex. C, Dkt. # 12 at 106–16.

Part 5 of the Policies contains an amended "Prior and Pending" clause that reads, in relevant part:

### PART 5

### COMMON POLICY EXCLUSIONS

The **Underwriter** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against the insured:

. . . .

**F.** arising out of, based upon or attributable to:

1. any litigation or demand against an **Insured** pending on or before the respective pending Prior and Pending Date set forth in Item 5 of the Declarations Page, or the same or essentially the same facts as alleged in such prior litigation; or

2. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other similar policy in which this Policy is a renewal or replacement.

Ex. B, Dkt. # 12 at 63; Ex. C, Dkt. # 12 at 126.

It is undisputed that the Policies defendant issued to plaintiff are "claims made and reported policies" ("claims-made policies"). Dkts. # 11 at 1, # 18 at 9. In Safeco Title Ins. Co. v. Gannon, 54 Wn. App. 330 (1989), *review den.*, 113 Wn. 1026 (1989), the Washington Court of Appeals described the difference between claims-made policies and occurrence policies as follows:

> Notice within an occurrence policy is not the critical and distinguishing feature of that policy type. Occurrence policies are built around an insurer who is liable for the insured's malpractice, no matter when discovered, so long as the malpractice occurred within the time confines of the policy period. Coverage depends on when the negligent act or omission occurred and not when the claim was

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 7

> asserted. The occurrence insurer, then, is faced with a "tail" that extends beyond the policy period itself. This "tail" is the lapse of time between the date of the error (within the policy period) and the time at which the claim is made against the insured. The giving of notice is only a condition of the policy, and in no manner is it an extension of coverage itself. It does not matter when the insurer is notified of the claim by the insured, so long as the notification is within a reasonable time and so long as the negligent act or omission occurred within the policy period itself.
>
> Claims-made policies, likewise require that notification to the insurer be within a reasonable time. Critically, however, claims-made policies require that that notice be given during the policy period itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given "within a reasonable time" or "as soon as practicable"—at all times, however, during the policy period.
>
> With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period, . . . [would negate] the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy, such is tantamount to an extension of coverage to the insurer gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do.

Id. at 337–38 (citations omitted). "Washington law requires that the notice requirement of 'claims made and reported' policies be strictly construed." Moody, 804 F. Supp. at 1125 (citing Gannon, 54 Wn. App. at 338). "'Claims made' or 'discovery' policies beneficially permit insurers to more accurately predict the limits of their exposure and the premium needed to accommodate the risk undertaken, with countervailing benefits to insured in premiums lower

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 8

than would be necessary for 'occurrence' policies." <u>Gannon</u>, 54 Wn. App. at 337 (citation omitted).

The administrative charges brought by Wickstrom and Davis against plaintiff are "formal administrative or regulatory proceeding[s]" under Part 4.B.4 of the Policies and thus, constitute a "claim" pursuant to the definition set forth in the Policies. <u>See</u> Ex. B, Dkt. # 12 at 45; Ex. C, Dkt. # 12 at 108. It is undisputed that plaintiff received notice of the administrative charges on April 28, 2016. <u>See</u> Ex. D, Dkt. # 12 at 138; Ex. E, Dkt. # 12 at 141; Dkt. # 18-1 (Skipton Decl.) at ¶ 5. Plaintiff did not report the claim to defendant until it provided notice of the subsequent filing of the underlying lawsuit on March 28, 2017, <u>see</u> Compl. at ¶¶ 9–10; Skipton Decl. at ¶¶ 7–8 16, after the 2016 Policy period had terminated. The underlying lawsuit arises from the same allegations of unlawful employment practices as the 2016 administrative charges. <u>See</u> Exs. D–F, Dkt. # 12 at 138–58. Part 6.IV.C of the Policies makes clear that, "All **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed one **Loss** on account of a one **Claim**. Such **Claim** shall be deemed to be first made when the earliest of such **Claims** was first made . . ." Ex. B, Dkt. # 12 at 53; Ex. C, Dkt. # 12 at 116 (emphasis in original). Part 4.B of the Policies makes clear that a "**claim** shall be considered made when an **Insured** first receives notice of the **Claim**." Ex. B, Dkt. # 12 at 45; Ex. C, Dkt. # 12 at 108 (emphasis in original). Pursuant to these clauses, the Wickstrom and Davis administrative charges and the complaint in the underlying lawsuit, all of which allege the same wrongful acts, constitute a single claim made initially on April 28, 2016 during the 2016 Policy period. Plaintiff did not report the claim until March 28, 2017, after the coverage period for the 2016 Policy had ended. Ex. A, Dkt. # 13 at 4; Ex. B, Dkt. # 12 at 12; Dkt. # 13 (Eggert Decl.) at ¶ 2. The Court finds defendant has discharged its burden to show that the claim is excluded from coverage under the Policies based on plaintiff's failure to timely report the claim under the 2016 Policy.

In its cross-motion, plaintiff urges the Court to determine that the claim is covered under the 2017 Policy because: (1) the Policies contain a "Prior and Pending" clause that does not exclude the claim; (2) and the Policies contain a "Loss Aggregation Clause" that is not properly

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 9

read to exclude the claim. Should these arguments fail, plaintiff argues that the notice/prejudice rule should be applied. None of plaintiff's arguments are persuasive.

First, plaintiff focuses on an amended "Prior and Pending" clause found in Part 5.F of the Policies. Dkt. # 18 at 9. Plaintiff argues that interpreting the Policies to exclude coverage for the claim at issue renders its "Pro-Pak Elite coverage," which amended the "Prior and Pending" language, "effectively worthless." Dkt. # 18 at 11. The Court disagrees. The first provision of the "Prior and Pending" language—which remained unchanged by the Pro-Pak Elite coverage amendment—excludes coverage for any claim arising out of any litigation or demand against an insured pending on or before September 4, 2014, or "the same or essentially the same facts as alleged in such prior litigation."[2] Ex. B, Dkt. # 12 at 49, 63; Ex. C, Dkt. # 12 at 112, 126. The language does *not* ensure that every claim arising after September 4, 2014 will be covered. Recognizing that plaintiff's failure to report the claim under the 2016 Policy results in exclusion of coverage under the Policies does not overwrite the "Prior and Pending" language.

Second, plaintiff argues that Part 6.IV.C of the Policies is a "Loss Aggregation Clause" that should not be interpreted to require an insured to submit a claim to preserve potential coverage under a future policy.[3] Dkt. # 18 at 10. Plaintiff relies upon Wellpoint, Inc. v. Nat'l Union Fire Ins. Co., 952 N.E.2d 254 (Ind. Ct. App. 2011), which does not mention the term "Loss Aggregation" and is distinguishable on the facts. The case concerns a reinsurer, Twin City, who sought to deny coverage by relating back claims to a claim that preceded Twin City's policy

---

[2] The Pro-Pak Elite coverage amended the default language of the Policies at Part 5.F. Ex. B, Dkt. # 12 at 49, 63; Ex. C, Dkt. # 12 at 112, 126. The default language contained three provisions under Part 5.F. The Pro-Pak Elite coverage amendment retained the first provision (discussed above), narrowed the second provision, and deleted the third provision. The narrowed second provision concerns claims subject to written notice. The deleted third provision concerns claims arising out of a "Wrongful Act" of which, as of September 4, 2014, the insured had knowledge and from which the insured could reasonably expect a claim to arise. Interpreting the Policies to exclude coverage in the instant case in no way reanimates the default language in the second and third provisions.

[3] Plaintiff refers to Part 6.IV.C of the Policies as the "Loss Aggregation Clause," Dkt. # 27 at 4, but because that descriptor does not appear in the Policies, the Court will continue to refer to this provision as Part 6.IV.C.

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 10

period. Wellpoint, 952 N.E.2d at 255. Before Twin City's policy period, another company had been the primary reinsurer, and the insured had provided notice of the claim to that prior reinsurer. Id. at 263. In examining the particular language at issue in that case, the Indiana Court of Appeals held that Twin City could not deny coverage based on this relation back of claims. Id. Unlike the insured in Wellpoint, plaintiff failed to provide notice to any insurer during the policy period when the claim was made. Moreover, the insured in Wellpoint could not have provided notice to Twin City when the claim first arose because no policy existed between Twin City and the insured at the time. Id. Plaintiff does not have this excuse. The Court finds plaintiff's "Loss Aggregation Clause" argument unpersuasive.

Third, plaintiff urges the Court to apply the notice/prejudice rule to its Policies. "The notice/prejudice rule requires insurers to show actual prejudice when denying coverage for lack of timely notice." See Moody, 804 F. Supp. 2d at 1125 (citing Gannon, 54 Wn. App. at 336). However, the Gannon court made clear that the notice/prejudice rule does not apply to claims-made policies, because "[i]f a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insured has not bargained." Gannon, 54 Wn. App. at 336 (citation omitted).[4] Plaintiff contends that Gannon is inapplicable to instances where an insured has continued coverage under separate, annual claims-made policies, but fails to comply with notice requirements during the relevant policy period. The cases plaintiff cites fail to support such an exception to the clear holding of Gannon.[5] The Court declines to apply the notice/prejudice rule to the claims-made polices at issue.

---

[4] Because the Washington State Supreme Court has not addressed this issue, the Court may look to the Washington Court of Appeals decision as persuasive authority. West v. Am. Tel. & Tel. Co., 311 U.S. 233, 237–38 (1940).

[5] Although plaintiff characterizes Westport Ins. Corp. v. Markham Grp., Inc. PS, 403 F. App'x 264 (9th Cir. 2010) as an "illustrative" case, Westport does not support plaintiff's argument to apply the notice/prejudice rule to its Policies. In the underlying ruling, Westport Ins. Corp. v. Markham Grp., Inc. PS, No. CV-08-221-RHW, 2009 WL 2777845 (E.D. Wash. 2009), the district court distinguished Gannon based on reasoning similar to that offered by plaintiff. This reasoning led the district court to apply the notice/prejudice rule to claims-made policies where there was "continual coverage" from year

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 11

Finally, in its response to defendant's motion for partial summary judgment, plaintiff asserts that issues of fact preclude summary judgment on the coverage determination because extrinsic evidence is required to (1) ascertain the parties' intent under the insurance contract, and (2) assess whether it is entitled to coverage by estoppel. Dkt. # 18-3. The Court disagrees. First, the Court has found that the Policies' language unambiguously precludes coverage. There is no genuine dispute as to the interpretation of the Policies' provisions in all material respects, and the Court need not consider additional extrinsic evidence as to the parties' intent. See Panorama Village Condo., 144 Wn.2d at 137. Second, plaintiff's coverage by estoppel and bad faith claims are not at issue in defendant's motion for partial summary judgment.[6] The motion for partial summary judgment pertains only to the issue of coverage under the plain language of the Policies, a determination the Court can make without yet reaching plaintiff's bad faith claims.

In sum, the Court finds the terms of the Policies clear and unambiguous, and plaintiff failed to comply with an essential requirement for coverage. Accordingly, defendant's motion for partial summary judgment regarding the issue of coverage (Dkt. # 11) is GRANTED. Plaintiff's cross-motion for partial summary judgment (Dkt. # 18) is DENIED.

---

to year via successive policies. Westport, 2009 WL 2777845, at *8. The Ninth Circuit reversed the district court and held, consistent with Gannon, that the notice/prejudice rule did not apply to a claims-made policy. Westport, 403 Fed. Appx. at 265–66.

Plaintiff also cites various nonbinding out-of-state cases for its assertion that the Washington State Supreme Court would apply the notice/prejudice rule to the case at hand. Dkt. # 18 at 18–20; see, e.g., Cast Steel Prods. v. Admiral Ins. Co., 348 F.3d 1298 (11th Cir. 2003); Helberg v. Nat'l Union Fire Ins. Co., 657 N.E.2d 832 (Ohio App. 1995). Notably, the Ninth Circuit observed that most courts that have confronted the issue have concluded that a renewal of a claims-made policy does not extend the reporting period for claims made during the earlier policy period. Alaska Interstate Constr., LLC v. Crum & Forster Specialty Ins. Co., 696 Fed. Appx. 304 (9th Cir. 2017) (referring to Cast Steel and Helberg as representing a "minority view").

[6] Plaintiff has not raised its coverage by estoppel claim in its cross-motion for summary judgment. See Dkt. # 18. It discusses the issue only in its response to defendant's motion. See Dkt. # 18-3. The coverage by estoppel issue is beyond the scope of the issues raised in defendant's motion for partial summary judgment. The Court declines to deny defendant's motion on this basis.

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 12

### IV. PLAINTIFF'S MOTION TO CONTINUE MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. # 16)

To the extent plaintiff seeks to continue its partial summary judgment motion under Rule 56(d), it fails to demonstrate the existence of specific information that would defeat summary judgment on the coverage issue. See Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir. 2008) (explaining that relief under Rule 56(d) requires a party to show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."). Plaintiff asserts it needs additional facts (1) regarding the applicability of certain clauses in the Policies, and (2) related to defendant's alleged bad-faith handling of plaintiff's claim, which it believes will support a finding of coverage by estoppel. Dkt. # 16 at 2. The Court finds plaintiff's requested discovery unnecessary to its straightforward determination of defendant's obligations to plaintiff under the Policies. The Court's determination of coverage requires application of undisputed facts to the unambiguous language of the Policies. Furthermore, plaintiff's bad faith claims are not at issue in the parties' cross-motions for partial summary judgment.[7] The Court finds plaintiff has not met its burden under Rule 56(d). Its "Motion to Continue [Defendant's] Motion for Partial Summary Judgment" (Dkt. # 16) is accordingly DENIED.

### V. DEFENDANT'S MOTION TO BIFURCATE AND STAY (Dkt. # 14)

Finally, defendant asks the Court to bifurcate this matter for trial, separating the contractual coverage claims, to be tried first, from plaintiff's extra-contractual claims. See Dkt. # 14. Because the Court has now ruled on the contractual coverage issue, it need not consider the request to bifurcate and stay. Defendant's "Motion to Bifurcate and Stay" (Dkt. # 14) is DENIED as moot.

---

[7] Plaintiff's citation to Grange Ins. Ass'n v. Lund, No. 13-5362RBL, 2013 WL 3819933 (W.D. Wash. July 23, 2013) in support of its request for a continuance is misplaced. Grange involved a request to continue a motion for summary judgment on the insured's bad faith claims *after* the court had reached a determination regarding the insurer's coverage obligation. Id. at *1–3.

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 13

## VI. CONCLUSION

For all the foregoing reasons, IT IS HEREBY ORDERED THAT,

(1)     Defendant's "Motion for Partial Summary Judgment" (Dkt. # 11) is GRANTED. Plaintiff's "Motion for Partial Summary Judgment" (Dkt. # 18) is DENIED.

(2)     Plaintiff's "Motion to Continue [Defendant's] Motion for Partial Summary Judgment" (Dkt. # 16) is DENIED.

(3)     Defendant's "Motion to Bifurcate and Stay" (Dkt. # 14) is DENIED as moot.

DATED this 16th day of December, 2020.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER REGARDING CROSS-MOTIONS FOR PARTIAL
SUMMARY JUDGMENT AND RELATED MOTIONS - 14